IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**AUBREY LEE CHRISTIAN**                                                                              **PLAINTIFF**

v.                                                                                                                                      No. 1:18CV149-NBB-RP

**VICKEY RUSSEL**
**SHERIFF CHRIS DICKERSON**
**JUDGE JOHN BISHOP**
**JOHN DOE (JAILER)**                                                          **DEFENDANTS**

**MEMORANDUM OPINION**

      This matter comes before the court on the *pro se* prisoner complaint of Aubrey Lee Christian, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants denied him adequate medical care for his central sleep apnea condition and that the general conditions of his confinement were unconstitutionally harsh.

      The defendants have moved for summary judgment; the plaintiff has not responded to the motion, and the deadline to do so has expired. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered in favor of the defendants.

## Factual Allegations[1]

Aubrey Lee Christian was arrested on June 6, 2018, and placed in the Itawamba County Jail in Fulton, Mississippi.[2] He a pretrial detainee because he could not post bail.[3] Mr. Christian suffers from a variety of medical conditions such as Hepatitis C, Lupus, and Central Sleep Apnea (the condition most relevant to this suit)[4] On June 8, 2018, Mr. Christian's mother arrived at the jail with his breathing machine to aid in managing his sleep apnea condition.[5] The breathing machine was filthy when Mr. Christian's mother left it at the jail. The defendants could not initially supply power to the breathing machine because there was no electrical outlet in Mr. Christian's cell.[6] On June 21, he was taken to the hospital for dizziness, shortness of breath, and chest pains[7] -- and was treated with aspirin and released.[8]

After returning to the jail, Christian was placed in medical observation.[9] On June 28, 2018, jail staff provided him with his breathing machine.[10] On that same day, Mr. Christian requested to be removed from segregation; however, the defendants told him that segregation was the only place in

---

[1] The exhibits referenced in the instant memorandum opinion may be found attached to the defendants' motion for summary judgment.

[2] Exhibit A at 7.
[3] Exhibit A at 7.
[4] Exhibit A at 8.
[5] Exhibit A at 8.
[6] Exhibit A; Exhibit C, at pgs. DEF 1148, DEF 1150.
[7] Exhibit A at 10; Exhibit C, at pgs. DEF 1089, DEF 1078-85.
[8] Exhibit C, at pgs. DEF 1078-85.
[9] Exhibit A at 10.
[10] Exhibit A at 13.

the jail that he could use his breathing machine because the other cells had no electrical receptacles.[11] On July 5, Mr. Christian's breathing machine filter became unusable, which prevented him from using the machine.[12] He did not ask anyone, including his visitors, to bring him a replacement filter; as such, from July 5 to the date of the complaint, he was unable to use his breathing machine.[13]

Mr. Christian also claims he was kept in segregation without a disciplinary hearing.[14] He alleges that while he was housed in segregation, his cell was infested with cockroaches, rats, and other vermin, as well as black mold. He also claims that sewage leaked into his cell.[15] Finally, Mr. Christian alleges that the defendants mismanaged his mail and refused to turn on the telephone so he could speak with his family.[16] He has not alleged any physical harm from his inability to use his breathing machine at the Itawamba County Jail – or as the result of any actions or omissions of the defendants in this case.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary

---

[11] Exhibit A at 13; Exhibit C, at pg. DEF 1150.
[12] Exhibit A at 14.
[13] Exhibit A at 15; Exhibit C, at pg. DEF 1088.
[14] Exhibit A at 18.
[15] Exhibit A at 19.
[16] Exhibit A at 20-21.

material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of

proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).

In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable*

*by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Denial of Medical Treatment**

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard applies to pretrial detainees under the Fourteenth Amendment as well as

convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Mr. Christian has not shown that the defendants were deliberately indifferent to his serious medical needs. He alleges that he received inadequate medical treatment because the defendants refused to allow him to use his breathing machine and refused to let him change the filters on the machine when they became unusable. The defendants, however, provided him with his breathing machine on June 28, 2018, just three days after his medical request to use it.[17] The defendants also accommodated the plaintiff so that could use his breathing machine at night.[18] There are no electrical

---

[17]Exhibit A at 12; Exhibit C, at pg. DEF 1153.
[18]Exhibit C, at pg. DEF 1150; Exhibit D at 5

outlets in the cells at the jail; thus, Ms. Russell moved Mr. Christian so that they could safely connect his breathing machine to a power source.[19] Mr. Christian also alleges that the defendants refused to let him change the filters on his breathing machine when it became unusable; however, he simply refused to tell someone in his family to obtain replacement filters.[20] He has not alleged that he requested filters from his family or those who visited him at the jail. The defendants also provided Mr. Christian with all his prescribed medicines, took him to doctor's and dentist's appointments when requested, and took him to the hospital when he was dizzy, short of breath, and had chest pains.[21]

In this case, Mr. Christian "was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). He has not shown "that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. Further, he has not alleged any harm from the defendants' actions or omissions regarding the breathing machine.[22] For these reasons, Mr. Christian has not established that the defendants were deliberately indifferent to his serious medical needs, and the defendants are entitled to summary judgment on this issue.

---

[19]Exhibit C at pg. DEF 1150; Exhibit D at 5-6.

[20]Exhibit C at pg. DEF 1088; Exhibit D at 5.

[21]*See generally* Exhibit C.

[22] Mr. Christian alleges that a doctor told him that his bout of dizziness, shortness of breath, and chest pains could have been caused by failure to use his breathing machine. His medical records do not, however, reflect such a finding.

**General Conditions of Confinement**

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). When a pretrial detainee challenges the conditions of his confinement, the court must analyze his claims under the Fourteenth Amendment. *Hines. v. Baker*, 2009 U.S. Dist. LEXIS 93487, *4 (N.D. Miss. Sept. 14, 2009). In *Bell v. Wolfish*, the Supreme Court discussed the constitutionality of conditions of confinement for pretrial detainees. 441 U.S. 520 (1979):

> Because they have not yet been convicted of the crime which they are charged, pretrial detainees have a due process right not to be punished for that crime.

*Id.* at 535 n.16.

Under the holding in *Bell*, "'a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose[,]'" *Eaton*, 2012 U.S. Dist. LEXIS 88844, at *9 (quoting *Hare*, 74 F.3d at 640.), and that have "resulted in 'serious deficiencies' in providing for his 'basic human needs.'" *Coleman v. Hogan*, 2018 U.S. Dist. LEXIS 72081, *6 (S.D. Miss. March 12, 2018) (quoting *Shepherd v. Dallas Cnty*, 591 F.3d 445, 454 (5th Cir. 2009)). "'[T]he Constitution [however] is not concerned with a *de minimis* level of imposition on pretrial detainees.'" *Id.* (quoting *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004), aff'd, 177 F. App'x

377 (5th Cir. Dec. 21, 2005), *cert. denied*, 547 U.S. 1055, 126 S. Ct. 1661, 164 L. Ed. 2d 397 (2006) (citing *Bell*, 441 U.S. 520, at 535)); *see also Wilson, supra*; *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences.")

In addition, "[o]nly punitive measures, and not nonpunitive, regulatory restrictions, are subject to due process limitations." *Alexander v. Roberts*, 2003 U.S. Dist. LEXIS 3782, *43 (citing *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)). A plaintiff may establish a punitive purpose "by direct evidence of intent by detention facility officials to punish the pretrial detainee . . . [or] a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective." *Hunter v. Harris*, 2010 U.S. Dist. LEXIS 95408, *18-*19 (S.D. Miss. Aug. 5, 2010).

Mr. Christian alleges that he was "kept in segregation without any type of disciplinary hearing" and that he routinely awoke with cockroaches and other vermin in the cell with him, that there was black mold growing in the cell and shower area, rust on everything, and a leaky toilet that dispersed raw sewage throughout the cell.[23] He also claims that the defendants have refused to turn on the telephone so he could speak with his family regarding making his bond and getting out of jail.[24] Each of these allegations may be characterized as a challenge to the conditions of his confinement. *See Strange v. Broadus*, 2010 U.S. Dist. LEXIS 88525, at *10 n.2 (S.D. Miss. May 12, 2010); *Ellison v. Broadus*, 2009 U.S. Dist. LEXIS 125 944, at *16 n.2 (S.D. Miss. Dec. 8, 2009); *Pierce v. Allison*,

---

[23]Exhibit A at 14, 19.

[24]Exhibit A at 14, 19, and 21.

2010 U.S. Dist. LEXIS 47899, *12 n.2 (S.D. Miss. March 16, 2010). However, as discussed below, none of these allegations rise above the level of *de minimis* infractions.

### Segregation

Mr. Christian claims he was placed into segregation without a disciplinary hearing and that his placement into segregation infringed on his due process rights. However, his placement in segregation was for a non-punitive reason, and non-punitive restrictions fall outside due process protections. *See Eaton v. Magee*, 2012 U.S. Dist. LEXIS 88844, *9 (S.D. Miss. June 27, 2012) . Mr. Christian was moved to segregation because it was the only place he could use his breathing machine.[25] His move to segregation was not punitive; instead, it was an attempt to accommodate his request to use his breathing machine.[26] Indeed, permitting Mr. Christian to use his breathing machine furthered two legitimate governmental interests: inmate safety and access to medical treatment. Placing Mr. Christian in non-punitive segregation without a hearing did not violate his Fourteenth Amendment due process rights. This claim is without substantive merit.

### Conditions of Mr. Christian's Cell and Facilities

Mr. Christian argues that the conditions of his cell (cockroaches, rats, rust, sewage, and mold) rise to the level of a Constitutional violation. These claims, however, are *de minimis* impositions and thus not a cognizable as Constitutional claims. *See Harrison v. Cox*, 2013 U.S. Dist. LEXIS 22368, 2013 WL 620799, at *5 (W.D. La. Jan. 16, 2013) (the presence of insects and other vermin amounted to no more than a *de minimis* imposition and was frivolous); *Gibson v. Gusman*, 2015 U.S. Dist. LEXIS 108734, 2015 WL 5060854, at *14 (E.D. La. Aug. 18, 2015) ("The jurisprudence has

---

[25]Exhibit C at DEF 1150; Exhibit D at 5-6.
[26]Exhibit C at DEF 1150, 1148; Exhibit D at 5-6.

repeatedly held that the mere fact that mold is present does not render an inmate's confinement unconstitutional."); *Carr v. Newcomer*, 2009 U.S. Dist. LEXIS 123559, 2010 WL 331689, at *9 (W.D. La. Jan. 19, 2010) (dismissing claim concerning mold in showers); *McCarty v. McGee*, 2008 U.S. Dist. LEXIS 9242, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.") It is also undisputed that the defendants provided Mr. Christian access to cleaning supplies every day; thus, he had the opportunity to clean his cell, shower, and other areas, if he wished.[27] In addition, though the Itawamba County Jail is seventy years old, it passes inspections, and undergoes routine maintenance and repairs regularly. *Id*. Mr. Christian's claims for relief based upon the general conditions of his confinement are thus without substantive merit.

## Mail Tampering

In order for the plaintiff to prevail on his claim of unconstitutional mail tampering, he must prove each of the following elements by a preponderance of the evidence: (1) that the prison officials intentionally confiscated his outgoing mail, and (2) that the confiscation of the plaintiff's mail resulted in actual harm to him. *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974)*, Brewer v. Wilkerson*, 3 F.3d 816, 824-25 (5th Cir. 1993), *Lewis v. Casey*, 518 U.S. 343, 349 (1996), *Jones v. Greninger*, 288 F.3d. 322, 325 (5th Cir. 1999). In this case, on October 6, 2018, Mr. Christian attempted to send outgoing correspondence not through prison mail, but hidden inside personal items he passed to one of his visitors at the jail. Doc. 47-4 at 2. This act violated jail rules, and Mr. Christian was punished by loss of commissary for one week and loss of visitation for one weekend. *Id*. He received all of his

---

[27] *See* Exhibits D, E, F, G, and H.

incoming mail after it was inspected according to Itawamba County Jail Policy. *Id.* Mr. Christian has not alleged that his mail was censored. On these facts, the plaintiff's claims for mail tampering do not rise to the level of constitutional claims, and must, therefore, fail. *Brewer v. Wilkerson*, 3 F.3d 816, 824-25 (5th Cir. 1993).

### No Allegation of Physical Injury

In any event, a *pro se* prisoner plaintiff in a § 1983 case must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages – regardless of the nature of the claim. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e). The physical injury required to state a claim under Section 1997e(e) "must be more than *de minimis*, but need not be significant." *Alexander v. Tippah County*, 351 F.3d 626, 631 (5th Cir. 2003) (citations omitted). Mr. Christian has alleged no physical injury at all; as such, he may not recover damages for mental or emotional damages in this case.

### Supervisor Liability

Mr. Christian has sued Sheriff Chris Dickerson because of he is ultimately in charge of the Itawamba County Jail. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under §

1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). In this case, the plaintiff does not allege that Sheriff Dickerson had any personal involvement or was causally connected to the incident in any way. As such, this case should be dismissed as to defendant Dickerson for failure to state a constitutional question.

## Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 19th day of November, 2019.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE